UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHAEL AVERY,

                   Petitioner,                Case Number 21-12138

v.                                           Honorable David M. Lawson

MICHAEL BURGESS,

                   Respondent.

_____/

**<u>OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS</u>**

A Genesee County, Michigan jury convicted petitioner Michael Avery of assault, drug, and firearm offenses, and he was sentenced to a lengthy prison term as a fourth felony habitual offender. Finding no relief from the Michigan appellate courts, he filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254 without the assistance of an attorney. Avery argues that his convictions were plagued by a number of procedural errors, some of which were brought to the state courts' attention. The Warden contends that some of these issues are not preserved properly for federal court review, and all of them are meritless. One issue — relating to an alleged Fourth Amendment violation — is not reviewable here, and the other issues lack merit. The petition will be denied.

I.

The Michigan Court of Appeals adjudicated Avery's direct appeal and summarized the facts in its unpublished opinion as follows:

> Defendant's convictions stem from the November 2015 assault of Marissa Ayliffe. On the evening of November 20, 2015, defendant, Ayliffe, and defendant's cousin, Venus Nelson, went to a bar in Flint. At some point during the evening, defendant became angry with Ayliffe and started yelling at her. Defendant then bit Ayliffe on her cheek. The trio left the Luxe Lounge sometime after midnight.

According to Ayliffe, beginning in the parking lot of the Luxe Lounge and continuing after the group got into defendant's car, defendant repeatedly assaulted her by punching her in the face, kicking her, pulling her hair, and biting her all over her body. Defendant also used a box cutter to cut open her pants and jacket, and cutting her leg and arm. Throughout this period, defendant would not let Ayliffe out of the vehicle, he threatened to kill her, and he told her that he would take her daughter if she told anyone about the assault. At one point, defendant stopped the vehicle, pulled out a firearm, put it by the side of Ayliffe's head, and then fired it out the driver's side window.

Defendant began driving again, continuing toward Fenton. Two tires on the vehicle subsequently deflated, and defendant stopped at a gas station. While Nelson went inside to get help for the tires, defendant continued his assault of Ayliffe. Ayliffe managed to escape from the vehicle, and she ran into the gas station. The gas station clerk called the police. Fenton police officers subsequently stopped defendant's vehicle and apprehended defendant and Nelson not far from the gas station. At the scene, the officers saw blood, clumps of hair, and a box cutter inside the vehicle, but they did not see drugs or a firearm.

After the case was transferred to the Flint Township Police because the assault began in that jurisdiction, the vehicle was searched pursuant to a search warrant. This search resulted in the recovery of a .32-caliber shell casing, baggies filled with cocaine and heroin, and a box cutter. Approximately a week after the assault, a civilian recovered a .32-caliber semiautomatic pistol in the vicinity of where defendant and Nelson had been apprehended, and this firearm was turned over to the police. No usable fingerprints were recovered from the firearm and DNA testing did not link defendant to the firearm, but a firearms expert determined that the .32-caliber shell casing found in defendant's vehicle was fired from that weapon.

*People v. Avery*, No. 344570, 2020 WL 2095927, at *1 (Mich. Ct. App. Apr. 30, 2020).

During trial, the prosecutor moved to amend the criminal information to change the charge of aggravated assault to assault with intent to do great bodily harm less than murder. The defendant objected, and the trial court ruled that the evidence supported the charge and the prosecutor had given the petitioner advance notice of his tentative intention to ask for the amendment. The Court granted the motion. The jury convicted Avery of assault with intent to do great bodily harm less than murder, felonious assault, felon in possession of a firearm, possession of a firearm in the commission of felony (felony firearm), possession of less than 25 grams of heroin, and possession

- 2 -

of less than 25 grams of cocaine.  Avery was sentenced as a fourth felony habitual offender to 10 to 20 years in prison for assault with intent to do great bodily harm conviction; four years and two months to 15 years each for his felonious assault and felon-in-possession convictions; and two to 15 years each for his carrying-concealed and his drug-possession convictions, which all run concurrent to each other but consecutive to a two-year term for his felony-firearm conviction.  His convictions were affirmed on direct appeal and the Michigan Supreme Court denied discretionary review.  *People v. Avery*, 506 Mich. 942, 949 N.W.2d 698 (2020) (table).

Avery filed his petition for a writ of habeas corpus on September 2, 2021.  This Court granted his motion to stay the proceedings and hold the petition in abeyance so that he could return to the state courts to file a post-conviction motion for relief from judgment to exhaust additional claims.  *Avery v. Burgess*, No. 21-12138, 2021 WL 4452214 (E.D. Mich. Sept. 28, 2021).

Two years later, Avery sent a letter informing this Court that the state trial court had denied his post-conviction motion and requested that the stay be lifted.  ECF No. 6, PageID.58.  This Court denied that request, pointing out that the petitioner had not yet appealed the decision to the state appellate courts and still had time to do so.  ECF No. 7, PageID.105–07.  When the time to appeal the state trial court's decision had passed, this Court issued another order lifting the stay and directed the Warden to respond to the petition.  ECF No. 8, PageID.109.  In the same order, Avery was given until September 16, 2024 to file a reply brief.  He has not done so, nor did he ever file an amended petition.

Avery seeks habeas relief in his original petition on the following claims:

I. Petitioner's due process rights were violated when the prosecutor lost dash cam video tape evidence that contradicted the officer's version of events, and [the] witness was material to petitioner's defense.

II. The automobile search[] violated petitioner's right against unreasonable searches and seizures because the search warrant affidavit was inadequate to support a search warrant.

III. Petitioner was denied his constitutional right to due process of law because the amendment of the information at the end of the trial from aggravated assault to assault with intent to do great bodily harm less than murder caused unfair surprise or prejudice to the petitioner.

IV. Petitioner was denied his constitutional right to a fair trial when the prosecutor knowingly allowed [a] witness to commit perjury to get a conviction on the drug charges.

Pet. at 5-8, ECF. No. 1, PageID.5-8.

The warden responded that some of Avery's claims are procedurally defaulted and that all his claims are meritless. The "procedural default" argument is a reference to the rule that the petitioner did not preserve properly some of his claims in state court, and the state court's ruling on that basis is an adequate and independent ground for the denial of relief. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). But the Court finds it unnecessary to address the procedural question, because it is not a jurisdictional bar to review of the merits, *Howard v. Bouchard*, 405 F.3d 459, 476 (6th Cir. 2005), and "federal courts are not required to address a procedural-default issue before deciding against the petitioner on the merits," *Hudson v. Jones*, 351 F.3d 212, 215 (6th Cir. 2003) (citing *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997)). The procedural defense will not affect the outcome of this case, and it is more efficient to proceed directly to the merits.

II.

Certain provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996), which govern this case, "circumscribe[d]" the standard of review federal courts must apply when considering an application for a writ of habeas corpus raising constitutional claims. *See Wiggins v. Smith*, 539 U.S. 510, 520 (2003). The

- 4 -

AEDPA provides a "highly deferential standard for evaluating state-court rulings[.]" *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (quoting *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (per curiam)). That means federal courts give the state court "the benefit of the doubt," *ibid.*, applying that "statutorily prescribed deference." *Michael v. Butts*, 59 F.4th 219, 225 (6th Cir. 2023) (citing 28 U.S.C. § 2254(d); *English v. Berghuis*, 900 F.3d 804, 811 (6th Cir. 2018)).

A federal court may grant relief only if the state court's adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or if the adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)-(2). "Clearly established Federal law for purposes of § 2254(d)(1) includes only the holdings, as opposed to the *dicta*, of [the Supreme] Court's decisions." *White v. Woodall*, 572 U.S. 415, 419 (2014) (quotation marks and citations omitted). "As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011). The distinction between mere error and an objectively unreasonable application of Supreme Court precedent creates a substantially higher threshold for obtaining relief than *de novo* review. Mere error by the state court will not justify issuance of the writ; rather, the state court's application of federal law "must have been objectively unreasonable." *Wiggins*, 539 U.S. at 520-21 (quoting *Williams v. Taylor*, 529 U.S. 362, 409 (2000) (quotation marks omitted)).

A.

Avery alleges that he was denied due process when the dash camera videotape from the Fenton police showing the events surrounding his arrest was deleted sometime before his trial. He argues that the videotape would show whether a gun was present in the vehicle or was thrown from it during the encounter and the circumstances of the initial search of his car. This claim invokes *Brady v. Maryland*, 373 U.S. 83 (1963), where the Supreme Court held that a prosecutor's failure to disclose evidence favorable to the defense constitutes a denial of due process "where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Id.* at 87. If the evidence is not only suppressed but destroyed, a constitutional violation can result if the destroyed evidence "both possess[es] an exculpatory value that was apparent before the evidence was destroyed, and [is] of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." *California v. Trombetta*, 467 U.S. 479, 488-89 (1984). If the evidence is only potentially useful to a defendant, there is no due process violation unless the defendant can show bad faith on the part of the police. *Arizona v. Youngblood*, 488 U.S. 51, 57-58 (1988).

The Michigan Court of Appeals considered and rejected this claim on direct appeal. The court explained that the police department's policy is to preserve indefinitely videos that record felony arrests, but other videos are preserved for 30 days and then overwritten. The court believed that the video of the petitioner's arrest was miscategorized and therefore subject to the 30-day policy. That conduct, the court found, was negligent but not indicative of bad faith. *Avery*, 2020 WL 2095927, at *4. The court also held that Avery failed to demonstrate prejudice, because one of the detectives testified that she reviewed the video and saw no images of a gun being tossed from the car. Avery's theory was that "the video was favorable for purposes of showing whether

- 6 -

a firearm was thrown out of the vehicle and evaluating the accuracy of the testimony concerning where the firearm was subsequently located by a civilian." But because of the detective's testimony, Avery "was able to elicit evidence about what the video showed that was helpful to his defense." *Ibid.*

The appellate court's holding faithfully applied federal law to a reasonable determination of the facts. There are three components of a true *Brady* violation: (1) the evidence at issue must be favorable to the accused, either because it is exculpatory or because it is impeaching; (2) the evidence must have been suppressed by the state, either willfully or inadvertently; and (3) prejudice must have ensued. *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999). No one can say with any degree of certainty beyond speculation that the video footage would have been helpful at Avery's trial. A video showing a gun departing the vehicle would have incriminated Avery, and he was able to elicit testimony that no such event was seen on the recording. The most that can be said is that the video *might* have been helpful to the defense, because the visual evidence might be more compelling that the detective's testimony. *Brady*'s strict requirements are relaxed when the evidence only "might have exonerated the defendant." *Youngblood*, 488 U.S.at 57. "[U]nless a criminal defendant can show bad faith on the part of the [prosecution], failure to preserve potentially useful evidence does not constitute a denial of due process of law." *Id.* at 58.

So, to prevail on his claim, Avery must show: (1) that the state acted in bad faith by failing to preserve the evidence; (2) that the exculpatory value of the evidence was apparent before its destruction; and (3) that the nature of the evidence was such that the defendant would be unable to obtain comparable evidence by other means. *Youngblood*, 488 U.S. at 57; *United States v. Jobson*, 102 F.3d 214, 218 (6th Cir. 1996).

Avery faces a formidable — even an insurmountable — task to show that the state knew that the video footage had value to the defense.  The Supreme Court has acknowledged that "[t]he presence or absence of bad faith by the [prosecution] for purposes of the Due Process Clause must necessarily turn on the [prosecution's] knowledge of the exculpatory value of the evidence at the time it was lost or destroyed."  *Youngblood*, 488 U.S. at 57 n.*.  "It is not enough that the [prosecution] knew that [the evidence] could be determinative of guilt or innocence if preserved or tested. . . . When the government is negligent, or even grossly negligent, in failing to preserve potentially exculpatory evidence, bad faith is not established." *Monzo v. Edwards*, 281 F.3d 568, 580 (6th Cir. 2002).

The state court of appeals determined that neither the prosecution nor the police engaged in bad faith, and this Court agrees.  The mere fact that the police had control over evidence and failed to preserve it is insufficient, by itself, to establish bad faith, nor will bad faith be found in the state's negligent failure to preserve potentially exculpatory evidence. *Malcum v. Burt*, 276 F. Supp. 2d 664, 683 (E.D. Mich. 2003).  The mere fact that the police may have been negligent, or even grossly negligent, in destroying or losing the videotape is insufficient to show that they acted in bad faith. *Monzo*, 281 F.3d 580.  Avery has not shown that the Fenton Police would have been aware of the allegedly exculpatory value of the dash camera videotape at the time that the tape was destroyed. *Malcum*, 276 F. Supp. 2d at 683.

Nor has Avery established prejudice.  "Prejudice (or materiality) in the *Brady* context is a difficult test to meet." *Jamison v. Collins*, 291 F.3d 380, 388 (6th Cir. 2002).  It is true that, "[t]o prevail on his *Brady* claim, [the petitioner] need not show that he 'more likely than not' would have been acquitted had the new evidence been admitted." *Wearry v. Cain*, 577 U.S 385, 392 (2016) (quoting *Smith v. Cain*, 565 U.S. 73, 74-76 (2012)). "He must show only that the new

- 8 -

evidence is sufficient to 'undermine confidence' in the verdict." *Ibid.*  However, in the habeas

context, "prejudice" takes on a different hue. *O'Hara v. Brigano*, 499 F.3d 492, 502-03 (6th Cir.

2007).  "Prejudice means that the 'nondisclosure was so serious that there is a reasonable

probability that the suppressed evidence would have produced a different verdict.'" *United States*

*v. Castano*, 906 F.3d 458, 466 (6th Cir. 2018) (quoting *Strickler*, 527 U.S. at 281).  Prejudice might

not result from the nondisclosure "if the State's other evidence is strong enough to sustain

confidence in the verdict." *Smith*, 565 U.S. at 76 (citing *United States v. Agurs*, 427 U.S. 97, 112-

13 & n.21 (1976)).

Here, the detective testified that she viewed the dash camera footage and did not see a

firearm being thrown from Avery's vehicle.  ECF No. 14-21, PageID1176-1177, 1180, 1189.

Avery's due process rights were not violated because the destruction of the dash camera videotape

did not leave him without the ability or means to bring out the fact that there was no video record

of him discarding a weapon from the vehicle. *See United States v. Leedy*, 345 F. Supp. 3d 941,

958 (S.D. Ohio 2018).   Avery is not entitled to relief on his first claim.

## B.

Next, Avery argues that the warrant to search his vehicle was not supported by probable

cause, and therefore the trial court erred by failing to suppress the evidence that was seized during

the search.  This claim will not be addressed on the merits, because Avery cannot overcome the

obstacle created by *Stone v. Powell*, in which the Supreme Court held that "where the State has

provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner

may not be granted federal habeas corpus relief on the ground that evidence obtained in an

unconstitutional search or seizure was introduced at his trial."  428 U.S. 465, 494 (1976).

The Sixth Circuit employs a two-step analysis to determine whether a defendant was given a full and fair opportunity to litigate a Fourth Amendment claim in state court: "First, the court must determine whether the state procedural mechanism, in the abstract, presents the opportunity to raise a fourth amendment claim.  Second, the court must determine whether presentation of the claim was in fact frustrated because of a failure of that mechanism." *Machacek v. Hofbauer*, 213 F.3d 947, 952 (6th Cir. 2000) (quotation marks omitted).

Avery actually presented his Fourth Amendment claim to the state trial court in his pretrial motion to suppress.  He later presented his Fourth Amendment claim to the Michigan appellate courts.  It is apparent that the state provided an opportunity for Avery to litigate his search-and-seizure issue and that nothing in the process frustrated that procedural opportunity.  He may not now present his Fourth Amendment claim on habeas review.  *Good v. Berghuis*, 729 F.3d 636, 640 (6th Cir. 2013).  Avery is not entitled to habeas relief on his second claim.

## C.

Avery next argues that his due process rights were violated when the trial judge permitted the prosecution to amend the information at the close of proofs to elevate an original charge of aggravated assault to the charge of assault with intent to do great bodily harm (AWIGBH).  The Michigan Court of Appeals rejected the claim, pointing out that, as "defendant concedes on appeal, the prosecution notified defendant before jury selection of the possibility of seeking to amend the information to incorporate an AWIGBH charge depending on how the testimony actually came in during the trial."  *Avery*, 2020 WL 2095927, at *7.   The court then found that the petitioner's argument was not well-developed, observing that he "does not claim that he was without notice of the underlying facts of the assault alleged, and defendant's vague insinuations that he *might* have conducted his defense "differently" do not give us any sense of how additional time would have

- 10 -

actually benefitted the defense." *Ibid.*  The court then held that Avery did "not establish[] that the amendment to the information resulted in unfair surprise or prejudice to him." *Ibid.*

A state criminal defendant has a due process right to be informed of the nature of the accusations against him.  *Lucas v. O'Dea*, 179 F.3d 412, 417 (6th Cir. 1999).  Notice and opportunity to defend against criminal charges as guaranteed by the Sixth Amendment to the United States Constitution are an integral part of due process protected by the Fourteenth Amendment and therefore apply to state prosecutions. *Cole v. Arkansas*, 333 U.S. 196, 201 (1948); *In Re Oliver*, 333 U.S. 257, 273 (1948).  "The due process clause of the Fourteenth Amendment mandates that whatever charging method the state employs must give the criminal defendant fair notice of the charges against him to permit adequate preparation of his defense." *Olsen v. McFaul*, 843 F.2d 918, 930 (6th Cir. 1988).

However, a complaint or indictment need not be perfect under state law as long as it adequately informs the defendant of the crime in sufficient detail so as to enable him to prepare a defense.  Therefore, an indictment "which fairly but imperfectly informs the accused of the offense for which he is to be tried does not give rise to a constitutional issue cognizable in habeas proceedings." *Mira v. Marshall*, 806 F.2d 636, 639 (6th Cir. 1986); *Dell v. Straub*, 194 F. Supp. 2d 629, 653-54 (E.D. Mich. 2002).  An alleged defect in a state court information or indictment is therefore not constitutional error unless a habeas petitioner can establish that: (1) he did not receive adequate notice of the charges; and (2) he was therefore denied the opportunity to defend himself against the charges.  *See Roe v. Baker*, 316 F.3d 557, 570 (6th Cir. 2002).  Moreover, a charging document need not give "notice of the exact method by which the criminal actions were alleged to have been committed." *Martin v. Kassulke*, 970 F.2d 1539, 1543 (6th Cir.1992).

"When reviewing amendments to state charging documents in habeas corpus proceedings, the federal courts focus on the questions whether the defendant was surprised by the amendment or otherwise prejudiced in his ability to defend himself at trial." *Rhea v. Jones*, 622 F. Supp. 2d 562, 583 (W.D. Mich. 2008) (citing *Tague v. Richards*, 3 F.3d 1133, 1141-42 (7th Cir. 1993); *Wright v. Lockhart*, 854 F.2d 309, 312-13 (8th Cir. 1988)).

The state appellate court correctly applied these rules when it denied relief on this claim. Avery did not show how he was prejudiced by the amendment of the information in this case. The prosecutor told defense counsel before trial that she might move to amend the aggravated assault charge to elevate it to a charge of assault with intent to do great bodily harm. Avery does not explain how his defense would have been different had the information been amended before trial, particularly since the two offenses are similar. Under Michigan law, the elements of assault with intent to do great bodily harm less than murder are: "(1) an attempt or threat with force or violence to do corporal harm to another (an assault), and (2) an intent to do great bodily harm *less than murder*." *Raybon v. United States*, 867 F.3d 625, 632 (6th Cir. 2017) (quoting *People v. Brown*, 267 Mich. App. 141, 147, 703 N.W.2d 230, 236 (2005)). Assault with intent to do great bodily harm is a specific intent crime, which requires "an intent to do serious injury of an aggravated nature," but an actual injury need not occur. *Ibid.* (citations omitted). By contrast, "an aggravated assault encompasses the elements of a simple assault and battery and includes the element of 'serious or aggravated injury.'" *People v. Allen*, No. 193887, 1997 WL 33343731, at *2 (Mich. Ct. App. Oct. 7, 1997) (citing *People v. Brown*, 97 Mich. App 606, 611, 296 NW2d 121, 123 (1980)). "Serious or aggravated injury" under the aggravated assault statute is defined as "substantial bodily (physical) injury or injury that necessitated immediate medical treatment or caused disfigurement, impairment of health or impairment of any bodily part." *Brown*, 97 Mich.

- 12 -

App. at 611, 296 N.W.2d at 123 (1980).  The only difference between the two crimes is "that assault with intent to do great bodily harm requires a greater intent to do serious injury than aggravated assault requires." *People v. Compian*, 38 Mich. App. 289, 300, 196 N.W.2d 353, 358 (1972).  In light of the fact that these two assault crimes are similar, Avery has offered no argument on how his defense was prejudiced by the amendment of the aggravated assault charge to a charge of assault with intent to do great bodily harm prior to closing arguments.  The state court properly applied federal law to this claim.

D.

Last, Avery alleges that the prosecutor committed misconduct by permitting the victim, Marissa Ayliffe, to offer perjured testimony by testifying at trial that she and Avery were using drugs on the night of the assault, which was contrary to her testimony at the preliminary examination that she did not see Avery with any drugs that night.

The Michigan Court of Appeals rejected the claim, explaining:

> In this case, defendant's appellate argument is premised on the assumption that Ayliffe's trial testimony regarding defendant's drug use was false and that her prior statements and preliminary examination testimony failing to indicate[] that defendant was using drugs that night were true.  However, defendant has not provided any evidence to support belief in his assumption over the equally reasonable possibility that her trial testimony was true and her preliminary examination testimony was false.  Defendant's failure to demonstrate that false testimony affecting the jury's decision to convict him — i.e. that Ayliffe testified falsely that he was using drugs that night — is fatal to his claim on plain-error review that the prosecution knowingly relied on false testimony to obtain a conviction.

> Moreover, defendant is incorrect that Ayliffe's testimony was the only evidence that he possessed controlled substances: defendant ignores the evidence that cocaine and heroin were discovered during the search of defendant's vehicle, in which the assault had occurred.  Possession of a controlled substance may be actual or constructive, and possession may also be joint "with more than one person actually or constructively possessing a controlled substance."

- 13 -

> We additionally note that defendant on appeal fails to acknowledge that Ayliffe was subjected to extensive cross-examination on her inconsistent testimony from the preliminary examination and that Ayliffe admitted that she had been untruthful at the preliminary examination.  Ayliffe testified at trial that her preliminary examination testimony had been the result of her fear of admitting her drug problem but that she had since sought treatment for her drug problem.  As a result, the jury was aware of the conflicts between Ayliffe's preliminary examination testimony and trial testimony.

*Avery*, 2020 WL 2095927, at *8-9 (citation omitted).

Prosecutors "may not knowingly present false evidence" to a jury.  *United States v. Fields*, 763 F.3d 443, 462 (6th Cir. 2014) (citing *Miller v. Pate*, 386 U.S. 1 (1967)).  "[D]eliberate deception of a court and jurors by the presentation of known false evidence is incompatible with 'rudimentary demands of justice.'"  *Giglio v. United States*, 405 U.S. 150, 153 (1972) (quoting *Mooney v. Holohan*, 294 U.S. 103, 112 (1935)).  "The same result obtains when the State, although not soliciting false evidence, allows it to go uncorrected when it appears."  *Napue v. Illinois*, 360 U.S. 264, 269 (1959).  But to prevail on a claim that the prosecutor relied on false testimony, a habeas petitioner must show that (1) the testimony was actually false, (2) the testimony was material, and (3) the prosecutor knew the testimony was false.  *Amos v. Renico*, 683 F.3d 720, 728 (6th Cir. 2012); *Rosencrantz v. Lafler*, 568 F.3d 577, 583-84 (6th Cir. 2009); *Coe v. Bell*, 161 F.3d 320, 343 (6th Cir. 1998) (quoting *United States v. Lochmondy*, 890 F.2d 817, 822 (6th Cir. 1989)).

The Michigan Court of Appeals faithfully applied these federal tenets when it rejected this claim on direct appeal.  To prevail, a defendant must show that the challenged statements were actually false, that the statements were material, and that the prosecutor knew they were false.  *Coe v. Bell*, 161 F.3d 320, 343 (6th Cir. 1998).  And a habeas petitioner must show that the witness's statement was "indisputably false," rather than misleading, to establish a claim of prosecutorial

- 14 -

misconduct or a denial of due process based on the knowing use of false or perjured testimony. *Byrd v. Collins*, 209 F.3d 486, 517-18 (6th Cir. 2000).

Conclusory allegations of perjury in a habeas corpus petition must be corroborated by some factual evidence. *Barnett v. United States*, 439 F.2d 801, 802 (6th Cir.1971). The only evidence that Avery offers in support of his claim is the fact that the victim changed her story concerning his drug use from her earlier testimony at the preliminary examination. Mere inconsistencies in a witness's testimony do not establish the knowing use of false testimony by the prosecutor. *Coe*, 161 F.3d at 343. Additionally, the fact that a witness contradicts herself or changes her story also does not establish perjury. *Malcum v. Burt*, 276 F. Supp. 2d 664, 684 (E.D. Mich. 2003) (citing *Monroe v. Smith*, 197 F. Supp. 2d 753, 762 (E.D. Mich. 2001)). Avery failed to show that the victim committed perjury at his trial.

All parties were aware that the victim changed her story. The presence of drugs in the car suggests that her trial testimony was the accurate version. It is fair to conclude, therefore, that the prosecutor did not know that the victim testified falsely at trial. *See Rosencrantz v. Lafler*, 568 F.3d 577, 587 (6th Cir. 2009). Moreover, defense counsel brought the victim's prior inconsistent statements to the attention of the jury.

III.

None of the petitioner's claims presents a basis to issue a writ of habeas corpus under 28 U.S.C. § 2254(d). The state courts' decisions in this case were not contrary to federal law, an unreasonable application of federal law, or an unreasonable determination of the facts. The petitioner has not established that he is presently in custody in violation of the Constitution or laws of the United States.

Accordingly, it is **ORDERED** that the petition and amended petition for a writ of habeas corpus are **DENIED**.

s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Dated:   January 8, 2025